(51 South. 693.)

No. 17,758.

SMITH et al. v. KRAUSE & MANAGAN LUMBER CO., Limited.

(Jan. 31, 1910. Rehearing Denied March 14, 1910.)

*(Syllabus by the Court.)*

1. SUCCESSIONS — SETTING ASIDE SALE — PLEADING—SUFFICIENCY—PETITORY ACTION.

Where, in a petitory action for the recovery of property alleged to have been sold (adversely to their title) in the succession of plaintiffs' author, it is alleged that the sale was absolutely null, and plaintiffs pray that it be so decreed, it is necessary, in order to disclose a cause of action, that grounds of nullity should be set forth, which, the allegations of the petition being taken as true, will authorize the court to hold that the sale was absolutely null; otherwise, plaintiffs must resort to a direct action to annul it, and prosecute the same contradictorily with the parties concerned therein.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1559; Dec. Dig. § 380.*]

2. MINORS — UNDERTUTOR — SETTING ASIDE SALE—PLEADING—SUFFICIENCY.

The allegation that the sale of property, in a succession, "by procès verbal of said sale, con-

veyed no title, being faulty in description, and absolutely null and void by purchase of same by John Smith, while acting in a fiduciary capacity as undertutor," and that said Smith discharged the functions of undertutor to a minor heir of the de cujus at a family meeting convened to advise with regard to the interest of such heir and which recommended the sale, discloses no cause of action in a petitory suit brought by a number of heirs, including the minor referred to, for the recovery of the property sold.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1559; Dec. Dig. § 380.*]

3. JUDICIAL SALES (§ 31*)—VALIDITY.

A judicial sale is completed by the adjudication, and, if the property is sufficiently described in the advertisement, and the adjudication is made in accordance therewith, the sale is good, though the description, as subsequently recited in the procès verbal, be insufficient.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. § 66; Dec. Dig. § 31.*]

4. JUDICIAL SALES (§ 53*) — VALIDITY — "FAULTY."

The allegation that the description by which property has been publicly sold, under order of court, is "faulty" does not warrant the conclusion that the sale is therefore an absolute nullity, since it is not every mere fault of description which will authorize a decree of nullity in such case.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 104–107; Dec. Dig. § 53.*

For other definitions, see Words and Phrases, vol. 3, pp. 2703, 2704.]

5. SUCCESSIONS — PERSONS WHO MAY PURCHASE — SALE OF SUCCESSION PROPERTY — PRESUMPTION IN AID OF PLEADING.

The legal inference, from the allegation that property which was sold more than 40 years ago in a succession, is that the property was sold to pay debts, and, in such case, a family meeting, convened to advise with reference to the interests of a minor heir, could neither promote the sale nor prevent it, and the discharge by the undertutor of the minor of his functions at such family meeting would not, of itself, have disqualified him from becoming the purchaser of the property.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1502, 1559; Dec. Dig. §§ 365, 380.*]

6. SUCCESSIONS — PERSONS WHO MAY PURCHASE.

The general rule is that all persons may buy and sell except those interdicted; and, as the undertutor is not interdicted from buying succession property in which the minor to whom he has been appointed may have an eventual interest, it follows that the question whether such a purchase is valid or invalid depends rather upon the circumstances of the particular case

than upon the mere official relationship of minor and undertutor.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1502; Dec. Dig. § 365.*]

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Winston Overton, Judge.

Action by Leroy Smith and others against the Krause & Managan Lumber Company, Limited. Judgment for defendant, and plaintiffs appeal. Affirmed.

George F. Poole and Robert R. Stone, for appellants. Pujo, Moss & Miller, for appellee. Merrick & Lewis, amici curiæ, in support of application for rehearing.

### Statement of the Case.

MONROE, J. This is a petitory action for the recovery of an undivided one-third interest in certain described tracts of land in the parish of Calcasieu.

There are 14 plaintiffs, and they allege that they are the owners of the following described property, to wit, an undivided one-third interest in and to (and here follows a description) "containing 580 acres, more or less, * * * in which petitioners' share is well worth $5.00 an acre, or a total of $2,900." They further allege that they became the owners of the property so described by reason of the facts that William and George Smith (brothers) located two "Rio Honda" claims, covering about 1,300 acres, and their titles were confirmed, in 1852; that George died, without issue, and William inherited from him and became the owner of the whole; that William married Malinda ——, by whom he had three sons—William, Jr., Pierre, and John B.—and that he died prior to 1860, and was survived by his wife, who entered 120 acres (which is described) as a homestead, and that the three sons "inherited the 1,300 acres, included in the two Rio Honda claims, and held the same in indivision, in the pro-

125 La.—23

portion of an undivided one-third each," and also inherited and held in the same manner the 120 acres, so entered by their mother; that William Smith, Jr., married Cidalise ——, by whom he had five or six children, of whom three—Nicolas, Cidalise, and Malina (or Malinda)—survived and married, and that the (petitioners) are the sole surviving heirs, through their respective parents, of said William Smith, Jr., and wife, seven of them being the children of Nicolas, five, of Cidalise, and two, of Malina (or Malinda). They further allege that the succession of William Smith, Jr., was opened in 1867, "and a family meeting called to advise as to the interests of the minors Euphemia, Vincent, and Malina, or Malinda, Hillier" (they being the two children, by as many marriages, of Malina, or Malinda, Smith), "at which John B. Smith was present and signing as representing said Malina, or Malinda, Hillier, as undertutor, which family meeting recommended the sale of the property of the succession, and at which sale, on June 11, 1868, John B. Smith became the purchaser of the undivided one-third interest in the above-described Rio Honda claim and the homestead entered by Mrs. Malina Smith, which includes the land now in controversy in this suit * * *; that the pretended sale of the property of the succession of William Smith, Jr., No. 276 on the probate docket, by procès verbal of said sale, recorded in Book 17, p. 259, March 23, 1897, conveyed no title, being faulty in description, and absolutely null and void by purchase of same by John B. Smith while acting in a fiduciary capacity as undertutor, and is without force and effect."

They allege that defendant is in possession of the property described without title, and refuses to surrender the same, and they pray for judgment recognizing them as the owners "of the above-described property, in indivision, * * * and decreeing the succession sale * * * of June 11, 1868, to John

B. Smith, undertutor of the minor Malinda Hillier, as shown by procès verbal of said sale, * * * to be an absolute nullity," and that defendant be ordered to surrender "the property herein described," etc.

The judge a quo maintained an exception of no cause of action and dismissed the suit, and plaintiffs have appealed.

### Opinion.

As plaintiffs allege that the property in which they seek to recover an interest was sold in the succession of William Smith, Jr., under whom they claim, and pray that the sale so made be decreed an absolute nullity, it is necessary, in order that their petition should disclose a cause of action, that it should contain allegations which, if true, would justify the court in holding that the sale so made was an absolute nullity, and may therefore be disregarded or collaterally attacked, since they must otherwise resort to a direct action to set it aside contradictorily with the parties concerned in it. Graham v. Hester, 15 La. Ann. 148; Bankston v. Owl Bayou Cypress Co., 117 La. 1053, 42 South. 500. The allegations relied on are: (1) That the succession sale of June 11, 1868, "by procès verbal of said sale, conveyed no title, being faulty in description; and (2) absolutely null and void by purchase of same by John B. Smith, while acting in fiduciary capacity as undertutor," etc.

1. It will be observed that the first ground of alleged nullity is that the sale in question, "by procès verbal of said sale, conveyed no title, being faulty in description." A judicial sale is, however, completed by the adjudication—the purchaser thereby becoming the owner of the property, and the contract, from that time, being subject to the rules governing ordinary sales. Civ. Code, art. 2608. If, therefore, in the instant case, the property was sufficiently described in the advertisement, and was adjudicated in accordance with the description, so given, the sale was good, though the description, as thereafter recited in the procès verbal, should appear to be erroneous or insufficient. But, it is not alleged that the description, even as recited in the procès verbal, is inadequate for the identification of the property, and no particular fault therein, or, to be more exact, no failure of description, such as would warrant the conclusion, reached by plaintiffs (that the sale conveyed no title), is set forth. That conclusion is one of law, and is based, not, solely, upon the alleged fault in the description, but upon that and the other ground taken together. Considered by itself, the mere allegation that the description of the property was "faulty," even if it necessarily applied to the description by which the adjudication was made, would disclose no cause of action for the setting aside of the sale, since it is not every mere fault in the description of the property that will authorize the annulling of a sale, and particularly is that true of a judicial sale under which the adjudicatee appears to have gone into possession and to have so remained, undisturbed, for more than 40 years.

2. As to the other ground relied on, to wit, that the succession sale was absolutely void because the succession property was adjudicated to John B. Smith, who acted as undertutor to the (then) minor, Malina, or Malinda, Hillier (now Mrs. Scott Wright), in the matter of a family meeting which had been assembled to advise with reference to her interest and had recommended the sale, we think the legal inference is that the property was ordered to be sold to pay the debts of the succession, and that the family meeting, on behalf of minor heirs, who were interested only in the residuum which might be left after the debts were paid, was unnecessary and ineffective. Succession of Ira Smith, 9 La. Ann. 107; Succession of Hood and Wife, 33 La. Ann. 469; Succession of Lange,

46 La. Ann. 1017, 15 South. 404. If, then, the action of the family meeting, and the approval of that action by the undertutor, could have had no effect either to bring about or to prevent the sale, there was nothing in the mere fact that such action was taken, and that it was approved by the undertutor, to prevent him from buying the property.

The undertutor, it must be remembered, occupies no fiduciary relation to the minor in the sense of holding the property of the latter in his possession or of administering it. He cannot even receive the property or funds of the minor, if unsafe in the hands of the tutor. Holmes v. Hemken, 6 Rob. 51. His duty is to act for the minor whenever his (the minor's) interest is in opposition to that of the tutor. It is true that, though he cannot be a member of a family meeting, he must be present for the purpose of advising, and should oppose the homologation of the proceedings if he disapproves the action taken. He is also required to cause the minor's mortgage against his tutor to be recorded. Civ. Code, arts. 275, 276, 278. There may, of course, be situations in which the interest of the undertutor would so far conflict with his duty to the minor as to estop him, in conscience and in law, from becoming the purchaser of property belonging to the latter or in which he might have an eventual interest, but the lawmaker does not seem to have considered that they require special legislation for their control, and the undertutor is nowhere prohibited from buying property in which the minor may be, directly or eventually, interested.

The tutor, upon the other hand, is charged with the care of the person of the minor and with the obligation of administering his property and of representing him in all civil matters, and he is, expressly prohibited, either personally or through another, from buying or leasing the property of his ward, from accepting the assignment of any rights or claim against him, or from contracting with him. Civ. Code, arts. 337, 1790.

The general rule is that all persons may buy and sell except those interdicted by law. Civ. Code, art. 2445. And, as undertutors are not interdicted from buying property in which minors to whom they are appointed may have an eventual interest, it follows that the question whether such a purchase, made by an undertutor in a particular case is valid or invalid will depend upon the circumstances of the case rather than upon the mere official relationship of minor and undertutor. In the instant case, we are of opinion, for the reasons stated, that no facts are alleged in the petition which, if taken as true, would authorize the conclusion that the sale of the succession property was even voidable, and, still less, void, because made to John B. Smith, who was undertutor of one of the minor heirs of the de cujus.

The judgment appealed from is therefore affirmed.